UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **ODEN METRO TURFING, INC.** | * | **CIVIL ACTION NO. 12-1547** |
| **VERSUS** | * | **JUDGE STAGG** |
| **CONTINENTAL CASUALTY COMPANY** | * | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a 12(b)(1) Motion to Dismiss for Lack of Capacity and Subject Matter Jurisdiction, and a 12(b)(3) Motion to Dismiss for Improper Venue filed by Defendant Continental Casualty Company ("Continental") [doc. # 3]. Defendant's motion is opposed by Plaintiff Oden Metro Turfing, Inc. ("Oden") [doc. # 8-1].

For reasons stated below, it is recommended that Defendant's 12(b)(1) Motion to Dismiss for Lack of Capacity and Subject Matter Jurisdiction be **DENIED**. It is further recommended that Defendant's 12(b)(3) Motion to Dismiss for Improper Venue be **GRANTED, and that this matter be transferred to the Eastern District of Texas, Tyler Division**.

### BACKGROUND

The matter presently before the Court involves an underlying lawsuit filed by Oden in Texas State court ("Texas litigation"), which was later removed to the Eastern District of Texas, Tyler Division. *See Oden Metro Turfing, Inc. v. Plaquemine Contracting Co., Inc.*, Civil Action No. 99-0142. Accordingly, the undersigned will briefly discuss the facts of the Texas litigation for purposes of clarity. On June 25, 1999, Oden brought a breach of contract claim, among other

related claims, against Plaquemine Contracting Company, Inc. ("Plaquemine"), Clyde Ewing, Jeanette Thomason, Claims Administration Corp. d/b/a CNA-Claims Administration Corp., Allen Thomason (collectively "Texas defendants"), and Continental. [doc. # 19-2, P. 8]. Oden was subcontracted by the Texas defendants to complete certain obligations in a separate contract between Plaquemine and the Texas State Department of Highways and Public Transportation. *Id.* at 6. This work "generally consisted of furnishing labor and material associated with 'seal coating' the roads and highways in question." *Id.*

In Oden's original petition [doc. # 19-2], it listed the Texas highway and road projects that it worked on, identifying each by the specific county and the associated highway or road: "Delta County, Texas, FM 2675, Hunt County, Texas, IH-30, Fannin County, Texas, US 82, Callahan County, Texas FM2945, Nolan County, Texas, Bl-20M, City of Marshall, Texas, Bowie County, IH-30." *Id.* Continental acted as a surety by issuing payment and performance bonds on behalf of Plaquemine on the above-listed construction projects. *Id.* Oden claimed that it performed its obligations under the subcontracts, but was never paid the sum of $846,794.53. *Id.*

Thereafter, on February 10, 2000, Oden and Continental entered into a settlement agreement [doc. # 3-2], in which, among other provisions, Oden released Continental of all payment bond claims in consideration of the sum of $256,000. [doc. # 3-2, P. 9]. Significantly, under paragraph 10 of the settlement agreement, the parties agreed that "[t]his agreement is to be construed in accordance with the law of the State of Texas." *Id.* at 6. Accordingly, Oden dismissed the payment bond claims against Continental on March 9, 2000, and Continental was realigned as a plaintiff in the Texas litigation. [doc. # 3-3, P. 4]. Ultimately, on May 23, 2000,

the Texas District Court ordered arbitration of all of Oden's claims (*Id.* at 8), and, on August 13, 2001, Continental was granted a Final Judgment in its separate claims against the Texas defendants. *Id.* at 15.

This brings the undersigned to the present matter. On June 6, 2012, Oden filed the instant Complaint [doc. # 1] against Continental alleging that Continental breached the February 10, 2000, settlement agreement. [doc. # 1, ¶ 1]. Oden points to paragraph 3 of the settlement agreement, in which the parties agreed that "any recovery up to $400,000 that is recovered by Oden and/or [Continental] pursuant to the Texas Trust Fund Act will be divided equally . . . [.]" *Id.* at ¶¶ 6-7 (citing [doc. # 3-2, P. 4-5]). Oden goes on to claim that Continental was awarded judgment against the Texas defendants in the amount of $1,306,128.75 plus interest for violation of the Texas Trust Fund Act and "failed to advise Oden of . . . the amount recovered, and . . . account for the proceeds." [doc. # 1, ¶¶ 9,14].

On August 6, 2012, Continental filed a Motion to Dismiss [doc. # 3] predicated on two separate grounds. Continental's first argument is twofold. First, Continental contends that Oden lacked the capacity to sue as a corporation under Fed.R.Civ.P. 17(b)(2) because the Texas Secretary of State revoked Oden's certificate of incorporation on August 30, 2002. [doc. # 3, P. 7]. Second, Continental argues that because Oden was not incorporated at the time of filing the instant suit, it was "not a citizen of any state, [and therefore] cannot establish diversity jurisdiction for the basis of invoking this [C]ourt's subject matter jurisdiction." *Id.* at 7-8. In the alternative, Continental argues that this Court is not the appropriate venue for Oden's claims because "[a]ll of the contacts between the parties and the events giving rise to this action occurred in Texas." *Id.* at 8.

In opposition, Oden retorts that it "had its full corporate powers reinstated" and submits a Certificate of Filing indicating that on August 15, 2012, Oden was "reinstated to active status on the records" of the Texas Secretary of State. [doc. # 8-1, P. 1]; [doc. # 8-3]. Therefore, Oden concludes that because it is presently a Texas corporation, it has the capacity to sue, and this Court has diversity jurisdiction. [doc. # 8-1, P. 2]. Additionally, Oden argues that venue is proper under 28 U.S.C. § 1391(c)(2) because Continental "is the only defendant and is deemed to reside in" Louisiana. *Id.* In response, Continental argues that Oden only had its corporate status reinstated after the filing of this lawsuit. [doc. # 14, P. 1]. Therefore, Continental concludes that Oden lacked capacity and the ability to invoke this Court's subject matter jurisdiction at the time Oden filed on June 6, 2012. *Id.*

The matter is now before the Court.

## LAW AND ANALYSIS

I.   **Lack of Capacity**

Defendant mistakenly seeks dismissal for lack of capacity under Fed.R.Civ.P. 12(b)(1). *See* [doc. # 3, P. 7-8]. The defense of lack of capacity to be sued is properly brought as a 12(b)(6) motion, and, if supported by matters outside the pleadings, should be treated as a motion for summary judgment under Rule 56. *See Klebanow v. New York Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965)("Although the defense of lack of capacity is not expressly mentioned in rule 12(b), the practice has grown up of examining it by a 12(b)(6) motion when the defect appears upon the face of the complaint."); *see also*, C. Wright and A. Miller, Fed. Prac. and Proc., Civil § 1294, at 395 (1969). Additionally, a motion under Rule 12(b)(6) can be based on information that is subject to proper judicial notice. Fed. R. Civ. P. 10(c). The Court can take

judicial notice of the "Certificate of Forfeiture" filed by Defendant and the "Certificate of Filing" filed by Plaintiff because they are both public records. *See* Fed. R. Evid. 201; *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986). Therefore, the undersigned will treat the motion before it as a Motion to Dismiss under 12(b)(6) for lack of capacity to sue.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where the claimant fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993) (citation omitted). The factual allegations need not be detailed, but they must be more than labels, conclusions, or a recitation of the elements of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The capacity of a corporation to bring suit is determined by the law of the state where it is organized. Fed.R.Civ.P. 17(b)(2). Therefore, this Court must look to Texas law to determine whether Oden has capacity to maintain this suit. Under § 171.252 of the Texas Tax Code, a corporation without corporate privileges is denied the right to sue or be sued. Tex. Tax Code Ann. 171.252; *Tex. Clinical Labs Inc. v. Leavitt*, 535 F.3d 397, 404 (5th Cir. 2008). A corporation that forfeited its corporate status may revive its privileges and access to the courts by obtaining reinstatement of its corporate charter. Tex. Tax Code Ann. §§ § 171.3125, 171.313, 171.314, 171.253.

In this case, the Texas Secretary of State revoked Oden's corporate status on August 30,

2002, pursuant to § 171.309 of the Texas Tax Code.[1] [doc. # 3-10]. According to the Certificate of Forfeiture, the Texas Secretary of State determined:

    1.    The Secretary of State received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code that there are grounds for forfeiture of the charter or certificate of authority of the reference entity.

    2.    That the entity has not revived its forfeited corporate privileges within 120 days after the date that the corporation privileges were forfeited.

    3.    The Comptroller of Public Accounts has determined that the entity does not have assets from which a judgment for any tax, penalty, or court costs imposed under Chapter 171 of the Code may be satisfied.

*Id.*

Thereafter, on August 15, 2012, Oden's corporate status was reinstated by the Texas Secretary of State. *See* [doc. # 8-3]. However, Oden's corporate reinstatement comes approximately two months after initiation of this suit on June 6, 2012. Therefore, the precise issue before the Court is whether, under Texas law, the reinstatement of corporate status by the Texas Secretary of State retroactively grants a plaintiff the capacity to sue when at the time of the filing of the underlying action it lacked that corporate status. The Court recognizes that this is an issue of first impression for the Fifth Circuit.

Although we have no Fifth Circuit cases that interpret the pertinent Texas Tax Code provisions, the Texas State Civil Appellate Court held that a reinstated corporation had capacity to maintain a lawsuit even though it filed prior to reinstatement of its corporate charter. *Acme*

---

[1] Section 171.309 of the Texas Tax code provides:"[t]he secretary of state may forfeit the charter, certificate, or registration of a taxable entity if: (1) the secretary receives the comptroller's certification under Section 171.302; and (2) the taxable entity does not revive its forfeited privileges within 120 days after the date that the privileges were forfeited." Tex. Tax Code Ann. 171.309.

*Color Art Printing Co., Inc. v. Brown*, 488 S.W.2d 507 (Tex. Civ. App., 1972); *see also Muller v. Barrett*, 1985 U.S. Dist. LEXIS 16637, No. L-84-28 at *1 (S.D. Tex. Aug. 21, 1985) (holding that "the reinstatement of the franchise would cure any difficulty that was caused by such forfeiture"). In *Acme*, the court held that a corporation's suit was improperly dismissed where the corporation's charter had been forfeited, but reinstated before the suit was dismissed. *Acme*, 488 S.W.2d at 508. The court found that allowing a corporation to proceed with a suit commenced before reinstatement of its charter was consistent with the Texas Tax Code, which does not expressly provide for the effect of corporate reinstatement. *Id.* The court underwent a review of the relevant case law and determined that the majority rule in states having similar statutes was that a plaintiff may maintain a suit commenced when its corporate powers were suspended if its powers were reinstated before the suit was dismissed.[2] *Id.* Moreover, the court found that this rule applies even where, like in the present matter, "the charter was forfeited by administrative action and revived after commencement of the suit."[3] *Id.* at 508-09.

Analogous to the plaintiff-corporation in *Acme* and the cases cited *supra* following the majority rule, in this case Oden forfeited it corporate status, filed this lawsuit, and thereafter, was reinstated as a corporation. Therefore, under the *Acme* court's interpretation of the relevant Texas law, Oden has the capacity to sue as a corporation under Fed.R.Civ.P 17(b).

---

[2] *See also Matanzas Packing Co. v. Rayonier, Inc.*, 195 F.2d 523 (5th Cir. 1952) (interpreting Florida law); *Peacock Hill Asso. v. Peacock Lagoon Constr. Co.*, 8 Cal. 3d 369 (1972); *Industrial Coordinators, Inc. v. Artco., Inc.*, 366 Mich. 313, 115 N.W. 2d 123 (1962); *see also* 16A FLETCHER CYCLOPEDIA CORP., Perm. Ed. § 7998 (Supp. 1971).

[3] *See also Allied Roofing Indus. v. Venegas*, 862 So. 2d 6 (2003); *A. A. Sutain, Ltd., v. Montgomery Ward & Co.*, 22 A.D.2d 607 (1965), aff'd 17 N.Y. 2d 776 (1966); *J. B. Wolfe, Inc. v. Salkind*, 3 N.J. 312 (1949); *Karnes v. Flint*, 153 Wash. 225 (1929).

Accordingly, with capacity secured, the undersigned now turns to the issue of subject matter jurisdiction.

## II. Subject Matter Jurisdiction

Defendant argues that the Court must dismiss the matter because at the time Oden filed the instant suit it was "not a judicial entity . . . and therefore cannot establish diversity for the purposes of subject matter jurisdiction." [doc. # 3, P. 1].

Section 1332 confers diversity jurisdiction upon federal courts in civil actions. Traditionally, whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the lawsuit was filed. *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957).

Section 1332(c) deems that a corporation is a citizen:

> of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

28 U.S.C. § 1332(c). The Fifth Circuit has specifically held that a corporation is a citizen of both the state of its incorporation and the state in which it has its principal place of business. *Harrison v. Black Clawson Co.*, 961 F.2d 547, 549 (5th Cir. 1992). An entity's corporate status is determined in accordance with state law because corporations are purely a creation of state law. *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528-29 (7th Cir. 2002) (looking to state law for purposes of determining state of citizenship when corporate charter has been revoked); *Brocki v. American Express Co.*, 279 F.2d 785, 786 (6th Cir. 1960); *see also Carden v. Arkoma Associates*, 494 U.S. 185, 188 (1990) (finding that in the context of diversity jurisdiction, "a

corporation is 'capable of being treated as a citizen of the State which created it, as much as a natural person.'"); *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900) (looking to Pennsylvania state law to determine the corporate status of an entity). Accordingly, this Court must interpret Texas corporate and tax law.

Pursuant to Texas law, the existence of a corporation ceases when the corporate charter has been "forfeited pursuant to the Tax Code, unless the forfeiture has been set aside." Tex. Bus. Org. Code § 11.001(4)(B). However, when an entity is reinstated "the existence of the terminated entity is considered to have continued without interruption from the date of termination; and . . . the terminated entity may carry on its business as if the termination of its existence had not occurred." Tex. Bus. Org. Code § 11.206(1)-(2).

The undersigned observes that there is no Fifth Circuit case law that precisely interprets § 11.206 and discusses the retroactive effect of reinstatement on the issue of subject matter jurisdiction. However, the Seventh Circuit has squarely held that the revocation of a corporation's charter before the filing of a lawsuit did not affect the corporation's citizenship status for diversity purposes. *Wild*, 292 F.3d at 528-29. In *Wild*, the corporate charter of one of the defendants had been revoked prior to the suit's being filed and thereafter was reinstated. *Id.* at 528. In his opinion, Judge Posner rejected application of the traditional principle that "jurisdiction is normally determined as of the date of the filing of the suit[,]" and concluded that "retroactive reinstatement . . . confer[s] jurisdiction" to a "corporation that had no corporate charter." *Id.* (citing *Costain Coal Holdings, Inc. v. Resource Investment Corp.*, 15 F.3d 733, 734 n. 3 (7th Cir. 1994)).

Therefore, under Tex. Bus. Org. Code § 11.206 and in line with Judge Posner's holding

9

in *Wild*, Oden's reinstatement had the retroactive effect of making it a corporate citizen of the State of Texas.  Accordingly, since Oden and Continental are diverse parties and the amount in controversy exceeds the sum or value of $75,000, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

With the issues of capacity and subject matter jurisdiction decided, the Court must now turn to Defendant's Motion to Dismiss for Improper Venue.

### III.    Venue

Defendant contends that this Court is not the "appropriate venue for Oden's claims, because all of the acts giving rise to Oden's suit occurred in Texas and neither of the parties is domiciled in Louisiana." [doc. # 3, P. 1].   Plaintiff responds that Continental (1) "is deemed to reside in [Louisiana] by virtue of 28 USC 1391(c)(2) [*sic*];" (2) "the core events and property rights Continental contracted to prosecute occurred and are located in [Louisiana];" and, (3) "the underlying events in this case arose as the result of public works projects occurring in [Louisiana], funded with public monies." [doc. # 8-1, P. 2-3].

When suit has been filed in a district of improper venue, the court may "dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. § 1406.  Where, as here, the suit is based solely on diversity of citizenship, the Court looks to § 1391 to determine whether venue is proper.  Section 1391(b) provides that the action

> may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at

      the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Additionally, under § 1391(c)(2), "an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . [.]" 28 U.S.C. § 1391(c)(2). When determining personal jurisdiction for venue purposes, the court must make a separate inquiry into personal jurisdiction as it existed when the complaint was filed, irrespective of subsequent consent or waiver. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

      "[T]he plaintiff has the burden of proving the district he chose is a district of proper venue." *Joseph v. Emmons*, No. 04-2843, 2005 U.S. Dist. LEXIS 5528, at *5 (E.D.La. Mar. 22, 2005); *accord Smith v. Fortenberry*, 903 F. Supp. 1018, 1019-20 (E.D.La. 1995). Nonetheless, if the court decides the motion without a hearing, it should "accept uncontroverted facts contained in [the] plaintiff's complaint as true and resolve conflicts in the parties' affidavits in the plaintiff's favor." *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D.Tex. 2001) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

      According to Oden's Complaint [doc. # 1], Continental is "domiciled in the State of Illinois and authorized to do and doing business in the State of Louisiana . . . [.]" [doc. # 1, ¶ 2]. However, Oden has failed to provide the Court with any evidence to establish that Continental (1) is "authorized to do and doing business in the state of Louisiana . . ." and (2) is "deemed to reside" in Louisiana under 28 U.S.C. § 1391(c)(2). Moreover, the undersigned ordered the parties to supplement the record with evidence to support Oden's claim that the Court has personal jurisdiction over Continental and that it therefore is deemed to reside in Louisiana

pursuant to § 1391(c)(2). [doc. # 18]. Oden failed to respond to this order with supporting evidence, and therefore, the undersigned must reject Oden's contention that Continental is "deemed to reside in [Louisiana] by virtue of 28 USC 1391(c)(2) [*sic*] . . . [.]"

Furthermore, the events that gave rise to the instant cause of action occurred in the State of Texas. First, Oden has, during the entirety of its corporate existence, been a domiciliary of the State of Texas. Second, all of the contracts in the underlying Texas litigation that gave rise to the instant action were formed in Texas. Specifically, as Oden alleges in its original petition, it was subcontracted by the Texas defendants to complete work pursuant to a separate contract in which the Texas State Department of Highways was a party. This work occurred in Texas on Texas roads. Third and finally, the February 10, 2000, settlement agreement, from which all of Oden's current claims stem, was negotiated and perfected in the State of Texas. The settlement agreement even provides that it "is to be construed in accordance with the law of the State of Texas." [doc. # 3-2, P. 9]. Therefore, the undersigned finds that venue is presently improper.

When venue is improper the district court shall dismiss the case, or "in the interest of justice, transfer . . . [it] to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Dismissal and re-filing are a time-consuming and inefficient process. *See Smith v. Fortenberry*, 903 F. Supp. 1018, 1021-22 (E. D. La. 1995). As stated above, the underlying Texas litigation was removed to the Eastern District of Texas, Tyler Division, and it appears that the settlement agreement [doc. # 3-2] was negotiated in Dallas, Texas. Therefore, given the length of time this matter has been litigated, the interests of justice are best served by transferring this case to a court and district where the case could have been brought – i.e. the United States District Court for the Eastern District of Texas, Tyler Division.

## CONCLUSION

For the above-stated reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss for Lack of Capacity and Subject Matter Jurisdiction [doc. # 3] filed by Defendant Continental Casualty Company be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss for Improper Venue [doc. # 3] filed by Defendant Continental Casualty Company be **GRANTED** and the above-captioned matter be transferred to the United States District Court for the Eastern District of Texas, Tyler Division.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 10th day of October 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE